IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHAPPEL CRAIGEN, #M25917, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:25-cv-00048-MAB |
| ) | |
| ANTHONY WILLIS, ) | |
| ANGELA CRAIN, ) | |
| NURSE LANG, ) | |
| NURSE REVA, ) | |
| N.P. MOLDENHAUER, and ) | |
| WEXFORD HEALTH SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Chappel Craigen, an inmate in the custody of the Illinois Department of Corrections (IDOC) and currently incarcerated at Menard Correctional Center (Menard), brings this lawsuit pursuant to 42 U.S.C. § 1983 for constitutional deprivations stemming from the denial of medical care for a torn Achilles tendon. (Doc. 1). He seeks monetary relief. *Id*.

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A.[1] Any portion that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *Id*.

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections and Wexford to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections and Wexford.

1

## THE COMPLAINT

Plaintiff sets forth the following allegations in the Complaint (Doc. 1, pp. 1-10): Plaintiff tore his Achilles tendon while he was incarcerated at Western Illinois Correctional Center on May 8, 2022. *Id*. at 6. He was issued crutches, a walking boot, and a low bunk permit. Plaintiff was also informed that he would undergo surgery. He suffered constant pain for months. *Id*.

While still waiting for surgery, Plaintiff transferred to Menard on October 21, 2022. During intake, he informed a nurse[2] about the unrelenting pain associated with his torn Achilles tendon. He also informed her about his permits for a walking boot, crutches, and special housing (low bunk/low gallery). The nurse assured Plaintiff that he would not be getting "any of that" at Menard, but she said he could submit a nurse sick call request, if he wanted. When he did so, Plaintiff's permits for crutches, a walking boot, and a low bunk/gallery were revoked. He was assigned to 4 Gallery Cell 22. *Id*.

Plaintiff then submitted a second nurse sick call request, but he received no response for two months. On December 16, 2022, he finally met with Nurse Lang. Plaintiff again described constant pain associated with his untreated injury. Nurse Lang gave him Tylenol (200 mg) and told him to "stay out of Jail." *Id*. at 6. When Plaintiff asked what 200 milligrams of Tylenol would do for him, the nurse replied, "[T]his isn't Burger King. You can't have it your way." *Id*. Hoping to avoid trouble, Plaintiff left without saying anything more. *Id*.

---

[2] Plaintiff does not name the nurse as a defendant or bring a claim against her in the Complaint.

On December 18, 2022, Plaintiff met with Nurse Reva. He reported constant pain associated with the untreated injury to his Achilles tendon. When Nurse Reva attempted to give him Ibuprofen (200 mg), Plaintiff asked what 200 milligrams of ibuprofen would do for a torn Achilles tendon. Nurse Reva told Plaintiff to blame himself and "Menard Health Care." *Id*. at 6. Plaintiff explained that he still needed permits for crutches, a walking boot, and low bunk/low gallery housing. The nurse became frustrated with him and ended the appointment. *Id*. at 7.

Plaintiff returned to his cell and filed an emergency grievance with Warden Anthony Willis. Although the grievance was deemed an emergency two days later on December 20, 2022, Warden Willis and Medical Director Angela Crain did not answer the grievance until April 24, 2023. *Id*. at 5, 7. On that date, the warden and medical director acknowledged Plaintiff's injury and referred him to Nurse Practitioner Moldenhauer for treatment with the nurse practitioner and with "orthopedics." *Id*. at 5, 7. However, Moldenhauer refused to treat Plaintiff and said, "[You] should have thought about health care before [you] came to Jail." *Id*. Moldenhauer also informed him that Wexford was not going to pay for treatment of a "sore foot." *Id*.

While still waiting for treatment, Plaintiff appealed the grievance decision to the Administrative Review Board (ARB). *Id*. at 5. The ARB denied the appeal on July 11, 2023. *Id*. As of that date, Plaintiff was still waiting to see a doctor about treatment of his torn Achilles tendon and related pain. *Id*. Plaintiff still complains of constant pain, which is exacerbated by climbing stairs and the ladder to his top bunk. He claims that the individual defendants denied him treatment to save Wexford money. *Id*. at 7.

3

## DISCUSSION

The Court designates the following count(s) in the *pro se* Complaint:

**Count 1:** Eighth Amendment claim against Nurse Lang for denying Plaintiff adequate medical care and permits for his pain and mobility issues stemming from a torn Achilles tendon on December 16, 2022.

**Count 2:** Eighth Amendment claim against Nurse Reva for denying Plaintiff adequate medical care and permits for his pain and mobility issues stemming from a torn Achilles tendon on December 18, 2022.

**Count 3:** Eighth Amendment claim against Nurse Practitioner Moldenhauer for denying Plaintiff medical care, permits, and a referral to orthopedics in 2023, for treatment of pain and mobility issues stemming from his torn Achilles tendon.

**Count 4:** Eighth Amendment claim against Medical Director Crain for her role in delaying necessary treatment and unnecessarily prolonging pain associated with Plaintiff's torn Achilles tendon by waiting four months to address the emergency grievance that was filed on December 18, 2022 and deemed an emergency on December 20, 2022.

**Count 5:** Eighth Amendment claim against Warden Willis for his role in delaying necessary treatment and unnecessarily prolonging pain associated with Plaintiff's torn Achilles tendon by waiting four months to address the emergency grievance that was filed on December 18, 2022 and deemed an emergency on December 20, 2022.

**Count 6:** Eighth Amendment claim against Wexford for its medical provider's practice of denying Plaintiff medical care to save the private medical corporation money.

**Any other claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[3]

The Eighth Amendment safeguards inmates against the denial of medical care that may result in pain and suffering serving no penological purpose. *Estelle v. Gamble*, 429

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (action fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face").

U.S. 97, 103 (1976). When evaluating a prisoner's claim for the denial of medical treatment in this context, the Court considers whether the allegations satisfy the objective and subjective components of this claim. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citation omitted). The allegations must describe a serious medical need, from an objective standpoint. *Id*. A medical need is sufficiently serious, when it has been diagnosed by a physician as requiring treatment or when the need for treatment would be obvious to a lay person. *Id*. The allegations must also demonstrate that each defendant responded to the medical need with deliberate indifference, from a subjective standpoint. *Id*. Deliberate indifference occurs when a defendant knows of or disregards an excessive risk to inmate health or safety. *Id*.

Plaintiff's allegations satisfy the objective component of this claim for screening purposes. He describes an untreated torn Achilles tendon, unrelenting pain, and mobility issues. *See Pettis v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (no dispute that ruptured Achilles tendon was sufficiently serious); *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011) (chronic pain presents a separate objectively serious medical condition). The allegations suggest that Plaintiff suffered from an objectively serious medical need.

The allegations also satisfy the subjective component of this claim against Plaintiff's direct medical providers, including Nurse Lang who allegedly denied Plaintiff medical care, effective pain medication, and/or medical permits for his injury on December 16, 2022 (Count 1); Nurse Reva who allegedly denied the same on December 18, 2022 (Count 2); and Nurse Practitioner Moldenhauer who refused to treat, refer, or seek a referral for treatment of Plaintiff's injury and pain in 2023 (Count 3).

5

Whether the allegations demonstrate deliberate indifference on the part of Medical Director Crain (Count 4) is a closer question. Plaintiff faults this Defendant for a four-month delay in responding to his emergency grievance, while he continued to suffer from an untreated torn Achilles tendon, constant pain, and mobility issues. At the time, Medical Director Crain was allegedly responsible for approving surgery and ordering treatment. (Doc. 1, p. 8). Delaying treatment could amount to deliberate indifference in this context where the delay exacerbates Plaintiff's injuries or unnecessarily prolongs his pain. *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010) (deliberate indifference claim stated against health care unit administrator who "stalled in authorizing a referral to an outside surgeon"); *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference."). Plaintiff alleges that the medical director delayed necessary treatment and caused him to suffer from unnecessarily prolonged pain between December 20, 2022 and April 24, 2023, when she took no steps to address the issues described in his emergency grievance. While waiting for her response, Plaintiff did not receive any care or treatment; he was still waiting for treatment of his injury and pain when the ARB denied his appeal on July 11, 2023. Given this, the allegations in Count 4 are sufficient to survive screening against Medical Director Crain.

Turning to the claim of deliberate indifference against Warden Willis (Count 5), the Court applies a different standard. As a non-medical grievance official, the warden could defer to the professional judgment of medical staff, so long as he did not ignore the plaintiff. *See Berry v. Peterman*, 604 F.3d 435, 440-41 (7th Cir. 2010). High level prison

administrators are not liable under the Eighth Amendment simply because they receive written correspondence from an inmate. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). At the same time, they cannot turn a blind eye to knowledge of an ongoing harm or shirk the duty to render aid. *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Plaintiff did not provide any grievance documents with the Complaint. However, Plaintiff's allegations suggest that the Warden turned a blind eye to Plaintiff's injury and unrelenting pain by failing to respond to his emergency grievance for four months, while Plaintiff received no care or treatment. Count 5 shall proceed against the Warden.

As for Count 6, the allegations fall short of stating a deliberate indifference claim against Wexford Health Sources, Inc. Wexford is the private medical corporation that provided medical staff and medical care to inmates at Menard. A private medical corporation can only be liable for deliberate indifference if one of its own policies, customs, or widespread practices caused the constitutional deprivation(s) at issue. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). The doctrine of *respondeat superior* is inapplicable under § 1983, so Wexford cannot be held liable for the misconduct of its employees absent this showing of a policy, custom, or widespread practice. *Id*. Plaintiff alleges that his treatment was delayed or denied because the individual defendants wanted to save the private medical corporation money. However, Plaintiff cites one example when he alleges that Nurse Practitioner Moldenhauer said Wexford was not going to treat his "sore foot." Plaintiff does not allege that the nurse practitioner ever requested approval for treatment, a referral for treatment, or any other medical devices (*e.g.,* walking boot, crutches, etc.)

from Wexford or that his request was denied. He does not allege that any other medical provider made a similar statement about Wexford when denying treatment. Plaintiff's claim against Wexford in Count 6 rests on a theory of *respondeat superior* liability and cannot proceed past screening.

DISPOSITION

**IT IS HEREBY ORDERED** that the Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A and will proceed, as follows: **COUNT 1** against **NURSE LANG**; **COUNT 2** against **NURSE REVA**; **COUNT 3** against **NURSE PRACTITIONER MOLDENHAUER**; **COUNT 4** against **ANGELA CRAIN**; and **COUNT 5** against **ANTHONY WILLIS**. However, **COUNT 6** against **WEXFORD HEALTH SOURCES, INC.** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**The Clerk's Office is DIRECTED to TERMINATE WEXFORD HEALTH SOURCES, INC. as a defendant in CM/ECF and ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

With regard to **COUNTS 1, 2, 3, 4,** and **5,** the Clerk of Court shall prepare for **NURSE LANG**, **NURSE REVA**, **NURSE PRACTITIONER MOLDENHAUER, ANGELA CRAIN**, and **ANTHONY WILLIS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form

6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint (Doc. 1) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and SDIL-Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though he was granted leave to proceed *in forma pauperis*.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result

in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 04, 2025**

                                              /s/ Mark A. Beatty
                                              **MARK A. BEATTY**
                                              **United States Magistrate Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file Answers to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.